# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**RONALD REEL (#356002)**                                    **CIVIL ACTION NO.**

**VERSUS**                                                                      **19-838-JWD-SDJ**

**JAMES M. LeBLANC, ET AL.**

## NOTICE

      Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

      ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 19, 2020.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**RONALD REEL (#356002)**                          **CIVIL ACTION NO.**

**VERSUS**                                          **19-838-JWD-SDJ**

**JAMES M. LeBLANC, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Complaint of the *pro se* plaintiff, Ronald Reel, an inmate incarcerated at the Louisiana State Penitentiary, Angola Louisiana. Reel's Complaint is subject to screening pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and pursuant thereto, the undersigned recommends dismissal of Reel's claims against James LeBlanc, Darrel Vannoy, Trent Barton, and Charles Gooden. Reel has, however, stated claims against Marcus Jones and Tammy Hendrickson, and Reel's claims against these defendants should proceed, with exceptions as discussed below.

## I.    Background

Reel filed the instant action against James M. LeBlanc, Darrel Vannoy, Marcus Jones, and Tammy Hendrickson alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. The plaintiff later supplemented his complaint to add Trent Barton and Charles Gooden for separate incidents occurring after those complained of in the plaintiff's original complaint.[1] Reel alleges that on April 23, 2019, Hendrickson forced the plaintiff "into a sexual engagement" involving oral sex performed on him.[2] Reel alleges this contact caused sores and rashes on his genitalia.[3] On this same date, while he was handcuffed behind his back, Jones allegedly sprayed Reel with a chemical agent, "rammed" his head into the concrete, struck him with a metal object,

---

[1] R. Doc. 7.
[2] R. Doc. 1, p. 5.
[3] R. Doc. 1, p. 5.

stripped him naked, and sprayed chemical agent onto his genital area causing injury.[4]  Reel filed a health care request on May 1, 2019, as a result of the injuries to his genitalia.[5]  He was examined and prescribed medications.  On May 6, 2019, Reel filed an administrative remedy procedure request ("ARP") relating to the above described incidents.  Reel wrote to Vannoy requesting that he file a federal Prison Rape Elimination Act ("PREA") complaint against Hendrickson.  Reel complains that his PREA claims have been ignored.[6]

On March 9, 2020, Reel filed a supplemental complaint alleging additional causes of action against two new defendants, Trent Barton and Charles Gooden.[7]  Reel alleges that, on September 5, 2019, Barton used excessive force against him, and on this same day, Gooden issued a false disciplinary report to the plaintiff.[8]  He requests monetary relief.[9]

## II.    Law & Analysis

### A.  Standard of Review

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action against a governmental entity or an officer or employee of a governmental entity if the Court is satisfied that the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted.  The statutes impose similar standards for dismissal.[10]  Both statutes are intended

---

[4] R. Doc. 1, p. 5.
[5] R. Doc. 1, p. 5.
[6] R. Doc. 1, p. 6.
[7] R. Doc. 7.
[8] R. Doc. 7, pp. 3-4.
[9] R. Doc. 1, p. 8.
[10] § 1915(e) provides a procedural mechanism for dismissal of those lawsuits against a governmental entity or employee or officer of a governmental entity that are frivolous, malicious, or fail to state a claim in proceedings where the plaintiff was granted leave to proceed *in forma pauperis*; § 1915A provides a procedural mechanism for dismissal of lawsuits by prisoners that are frivolous, malicious, or fail to state a claim upon which relief may be granted regardless of the pauper status of the plaintiff.  Plaintiff was granted permission to proceed *in forma pauperis* on December 3, 2019.  (R. Doc. 3).

to afford the court the ability to separate those claims that may have merit from those that lack a basis in law or in fact.

A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"[11]  A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."[12]  The law accords judges not only the authority to dismiss a claim that is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations.[13]  Pleaded facts that are merely improbable or strange, however, are not frivolous for purposes of § 1915.[14]  A § 1915 dismissal may be made at any time, before or after service of process and before or after an answer is filed, if the court determines that the allegation of poverty is untrue; or the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[15]

To determine whether the complaint fails to state a claim under § 1915(e)(2)(B)(ii), courts apply the same standard used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[16]  Accordingly, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party.[17]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18]  "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[11] *Denton v. Hernandez*, 504 U.S. 25, 33-33 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989).
[12] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).
[13] *Denton,* 504 U.S. at 32.
[14] *Id.* at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).
[15] *See Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).
[16] *Hart v. Harrison*, 343 F.3d 762, 763-64 (5th Cir. 2003).
[17] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] A § 1915 dismissal may be made at any time, before or after service of process and before or after an answer is filed, if the court determines that the allegation of poverty is untrue; or the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[20]

**B.  Reel has failed to state a claim against LeBlanc and Vannoy**

Supervisory officials may be held liable under § 1983 only if they affirmatively participate in acts that cause constitutional deprivation or implement unconstitutional policies that causally result in plaintiff's injury.[21]  Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.[22]  Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.[23] Supervisory liability[24] can be found to exist if a supervisory official implements a policy so deficient that the policy itself may be seen to be a repudiation of constitutional rights and may be seen to be the moving force behind a constitutional violation.[25]

---

[19] *Id.*

[20] *See Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

[21] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

[22] *See Iqbal*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").

[23] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

[24] Though the term supervisory liability is often used, the Supreme Court has described this as a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.

[25] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

Here, Reel has alleged that LeBlanc and Vannoy are responsible for all inmate's safety and that their failed supervision resulted in Plaintiff's injuries.[26]  These facts are against LeBlanc and Vannoy only in their supervisory capacities, which simply is not viable under § 1983.[27]  Plaintiff has failed to allege any personal participation of LeBlanc and Vannoy in the acts that allegedly violated his constitutional rights and has not alleged implementation of a policy by LeBlanc and Vannoy that is so deficient it itself may be seen as a repudiation of constitutional rights. Accordingly, the claims against LeBlanc and Vannoy should be dismissed with prejudice.

### C.  Reel has not stated a PREA claim

To the extent Reel argues that his rights under the PREA were violated, the PREA does not create such a cause of action.[28]  The PREA does not create a private right of action for inmates to sue prison officials for noncompliance with the PREA.[29]  Rather, the PREA was intended to address the problem of rape in prison, authorize grant money, and create a commission to study the issue; it does not give prisoner's any specific rights.[30]  Similarly, to the extent Reel alleges LeBlanc and Vannoy violated PREA by not investigating Plaintiff's claims properly, this fails to state a claim for the same reason.[31]  Though the PREA does not create a cause of action, Reel has still stated a claim against Hendrickson and Jones for cruel and unusual punishment in violation of the Eighth Amendment.

---

[26] R. Doc. 1, p. 7.

[27] *Herndon v. Tanner*, Civil Action No. 17-02350, 2017 WL 3841836 (E.D. La. July 26, 2017) (the PREA does not render supervisory liability feasible under § 1983; rather, supervisory liability remains unavailable). *Compare Zollicoffer v. Livingston*, 169 F.Supp.3d 687 (S.D. Tex. 2016) (though vicarious liability is not viable, a defendant may be held liable for his own conduct in failing to train and supervise personnel or implement policies to deal with an ongoing problem of sexual assault.  Here, Plaintiff has not alleged a failure to train, and his complaints against Leblanc and Vannoy are too conclusory and general to be found to state a claim.).

[28] *Krieg v. Steele*, 599 F.Appx. 231, 232-33 (5th Cir. 2015).

[29] *Abshire v. Corrections Corporation of America*, 2015 WL 10579295 (W.D. La. Dec. 21, 2015).

[30] *Id.*, citing *Chinnici v. Edwards*, Civil Action No. 07-229, 2008 WL 3851294 (D. Vt. Aug. 13, 2008).

[31] *Means v. Stephen*, Civil Action No. 18-140, 2019 WL 847944 (W.D. La. Jan 31, 2019) (a plaintiff's claim that defendants prevented him from filing a grievance concerning sexual assault pursuant to the PREA was not cognizable under § 1983).

### D. Reel's claims against Barton and Gooden are unexhausted and should be dismissed

On March 9, 2020, Reel filed a supplemental complaint with allegations against Barton and Gooden for incidents occurring in September 2019.[32]  With respect to the incident involving Barton, Reel filed a grievance on September 9, 2019.[33]  Reel attempted to supplement his grievance to include complaints regarding Gooden on November 4, 2019.[34]  A first step response was issued on November 22, 2019.[35]  A second step response was issued on January 13, 2020.[36]  This suit was filed on November 26, 2019, and Reel's Complaint was docketed on December 2, 2019.[37]

Pursuant to the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[38]  The PLRA's exhaustion requirement is mandatory, and unexhausted claims may not be brought in court.[39]  When a prisoner fails to exhaust his administrative remedies, he fails to state a claim upon which relief may be granted.[40]  Generally, a prisoner's failure to exhaust administrative remedies is an affirmative defense under the PLRA and prisoners "are not

---

[32] R. Doc. 7.

[33] R. Doc. 7, p. 3.

[34] R. Doc. 7, p. 4.  The prison allegedly refused to allow the plaintiff to supplement his grievance, meaning the plaintiff's claims against Gooden have not yet even been presented to prison officials and are clearly unexhausted. However, for sake of argument, the undersigned proceeds with the presumption that the plaintiff should have been allowed to supplement his grievance to include the claims against Gooden.

[35] R. Doc. 7, p. 4.

[36] R. Doc. 7, p. 5.

[37] The courts of this Circuit have long concluded that the prison mailbox rule generally applies to the filing of pleadings submitted to courts by Louisiana *pro se* inmates.  Pursuant to that rule, an inmate's pleadings are considered to be filed on the date that they are presented to prison officials or placed into the prison mailing system for transmission to the Court, not on the date that they are ultimately received or docketed by the Court.  *See Cooper v. Brookshire*, 70 F.3d 377, 379-80 (5th Cir. 1995); *Vicks v. Griffin*, 07-5471, 2008 WL 553186, at *3 (E.D. La. Feb. 28, 2008).

[38] 42 U.S.C. § 1997(e)(a).

[39] *Jones v. Bock*, 549 U.S. 199, 211 (2007).

[40] *Hicks v. Garcia*, 372 Fed. Appx. 557, 558 (5th Cir. 2010).

required to specially plead or demonstrate exhaustion in their complaints."[41]  However, the United States Court of Appeals for the Fifth Circuit permits a district court to *sua sponte* dismiss a case for failure to state a claim, predicated on failure to exhaust, "if the complaint itself makes clear that the prisoner failed to exhaust."[42]

In Louisiana, an inmate must follow a two-step Administrative Remedy Procedure ("ARP") process to exhaust administrative remedies before filing suit in federal court.  The ARP process is codified in the Louisiana Administrative Code under Title 22, Part I, § 325. An inmate initiates the ARP process by completing a request for administrative remedy or writing a letter to the warden.  An ARP screening officer screens the inmate's request and either accepts the request or rejects it for one of the enumerated reasons.  A request rejected during the screening process cannot be appealed to the second step.  If a request is accepted at the screening level, the warden must respond on a first step response form within forty (40) days of receipt of the request (five days for PREA).  An inmate dissatisfied with the first step response, may proceed to the second step of the ARP process by appealing to the Secretary of DOC.  The DOC Secretary must issue a response within forty-five (45) days from the date the request is received using a second step response form.  An inmate dissatisfied with the second step response may file suit.  Whether or not a second-step response is received, once ninety days have passed from the initiation of the ARP process, unless an extension has been granted, the inmate may file suit.

It is clear from the face of Reel's supplemental Complaint that his claims against Barton and Gooden were unexhausted at the time the complaint was filed.  Reel admits that he did not receive a second step response regarding the incidents complained of involving Barton until January 13, 2020, but Reel initiated this lawsuit on November 26, 2019, over one month prior to

---

[41] *Jones*, 549 U.S. at 216.
[42] *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2014).

when his claims were properly exhausted.  Further, though the plaintiff alleges he attempted to supplement his grievance against Barton to also complain about the actions of Gooden, that supplement was rejected.  Thus, based on the face of the complaint, a grievance has yet to be properly filed to complain of the actions of Gooden.  Pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him at the prison *prior* to commencing a civil action in this Court; "it may not be excused if exhaustion is achieved while the suit is pending."[43]  As Reel admits he did not receive a second step response until after he filed suit, his remining claims are unexhausted on the face of the Complaint and thus, subject to dismissal, without prejudice, for failure to state a claim.[44]

### E.  Plaintiff has stated a claim under the Eighth Amendment against Hendrickson and Jones

Regarding Plaintiff's claims against Jones, Plaintiff has stated a claim for excessive force in violation of the Eighth Amendment.  Force is considered excessive in violation of the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[45]

---

[43] *Patterson v. Stanley*, 547 Fed.Appx. 510, 512 (5th Cir. 2013) (citing *Gonzales v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

[44] On the face of the supplemental complaint, because the Court cannot ascertain whether the plaintiff had other grievances backlogged or if there was other reason for delay of a response at the first step, a first step response should have been issued by either September 14, 2019, if these claims are, in fact classified as PREA claims or October 19, 2019 if the claims are not classified as PREA claims.  The Court does not have to resolve whether the plaintiff's claims against Barton or Gooden should be classified as PREA claims at this juncture because regardless, when the time period elapsed for the issuance of a first step response, whether that be after five or forty days, the plaintiff should have proceeded to the second step in the administrative remedy process.  Rather than proceeding to the second step after the appropriate time period elapsed, Reel admits in his supplemental complaint that as of November 4, 2019, his grievance was still pending at the first step, and he, in fact, attempted to supplement the grievance, instead of proceeding to the second step.  (R. Doc. 7, p. 4).  Even assuming the plaintiff attempted to proceed to the second step of the process on the same date he attempted to supplement his grievance at the first step, November 4, 2019, a response would not have been due at the second step until December 19, 2019.  Accordingly, when the plaintiff filed his suit on November 26, 2019, a second step response was not overdue; had the second step response been overdue, the plaintiff would have had the right unilaterally proceed to the next step, *i.e.*, initiating suit in this Court, but, here, a second step response was not overdue and had not been issued.  Thus, the plaintiff's claims against Barton and Gooden were unexhausted at the time the plaintiff instituted this action.

[45] *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

"An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[46] The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."[47] Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any; the need for the application of force; the relationship between the need for force and the amount of force utilized; the threat reasonably perceived by prison officials; and any efforts made to temper the severity of a forceful response.[48]

Plaintiff states that on April 23, 2019, while he was handcuffed with his hands behind his back, Jones "sprayed a chemical agent directly into my right eye, rammed my head into the concrete ground, struck me with a metal object in my head and moments later, stripped me naked and sprayed more chemical agent on my penis and ball, which left or caused blisters on my penis."[49]  Plaintiff sustained injuries to his eyes and genitalia, for which medicine was prescribed.[50] Based upon Plaintiff's version of events, Jones's use of force was unprovoked and occurred while Plaintiff was restrained, posing no threat.  Because there was no need for the use of force, and the force appears to have been great, Plaintiff has stated a claim for excessive force against Jones.[51]

Additionally, Plaintiff has stated a claim for excessive force against Hendrickson. "[S]exual assaults against inmates by prison guards without lasting physical injury may be

---

[46] *Wilkins*, 559 U.S. at 38.
[47] *Hudson*, 503 U.S. at 10.
[48] *Id.* at 7.
[49] R. Doc. 1, p. 5.
[50] R. Doc. 1, p. 5.
[51] The Court recognizes that Plaintiff states he sought a claim pursuant to the PREA against Jones, but as stated above, PREA does not create a cause of action, and the actions of Jones are better classified as excessive force rather than sexual assault.

actionable under the Eighth Amendment as acts which are offensive to human dignity."[52]  The Eighth Amendment guarantees the right to be free from "cruel and unusual punishments" while in custody;[53] sexual assault is properly analyzed as an excessive force claim.[54]  The Fifth Circuit has previously held "[w]hile violent sexual assaults involving more than *de minimis* force are actionable under the Eighth Amendment, isolated, unwanted touchings by prison employees, though despicable and, if true, they may potentially be the basis of state tort actions…they do not involve a harm of federal constitutional proportions as defined by the Supreme Court."[55]  However, this pronouncement of the law was in 2001, which is notably prior to the enactment of PREA and is nearly twenty years old, and the standards by which conduct is to be evaluated in reference to the Eighth Amendment are required to evolve with time and society.

This Court recently held that "in more recent years, federal courts have recognized that the evolving standards of decency demonstrate a national consensus that any sexual assault of a prisoner by a prison employee constitutes cruel and unusual punishment."[56]  The fact that sexual contact between an inmate and prison official is largely criminalized demonstrates that "the sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment."[57]  Moreover, as noted previously by this Court, there is no possible penological justification for this type of sexual assault;[58] it is difficult to conceive of any circumstance in which sexual assault of the type that occurred here would be necessary to restore discipline.

---

[52] *Copeland v. Nunan*, 250 F.3d 743 (5th Cir. 2001) (internal quotation marks and citations omitted).
[53] *Whitley v. Albers*, 475 U.S. 312, 318 (1986).
[54] *Bearchild v. Cobban*, 947 F.3d 1130 (9th Cir. 2020).
[55] *Copeland*, 250 F.3d at *3.
[56] *Lagarde v. Metz*, Civil Action No. 13-805, 2017 WL 457654 at *4 (M.D. La. Feb. 2, 2017) (internal quotation marks and citations omitted) (in so holding, the Court noted that 48 states, at the time the decision was rendered, criminalized sexual contact between inmates and correctional officers as opposed to only 18 states in 1997).
[57] *Id.* (quoting *Crawford v. Cuomo*, 796 F.3d 252, 260 (2d Cir. 2015)).
[58] *Id.*

Because the standards of decency are constantly evolving, an opinion issued by the Ninth Circuit this year analyzing sexual assault in the context of the Eighth Amendment is worth mentioning. Therein, the court held as follows:

> First, sexual assault serves no valid penological purpose. Second, where an inmate can prove that a prison guard committed a sexual assault, we presume the guard acted maliciously and sadistically for the very purpose of causing harm, and the subjective component of the Eighth Amendment claim is satisfied. Finally, our cases have clearly held that an inmate need not prove that an injury resulted from sexual assault in order to maintain an excessive force claim under the Eighth Amendment. Any sexual assault is objectively 'repugnant to the conscience of mankind' and therefore not *de minimis* for Eighth Amendment purposes.[59]

This recent pronouncement by the Ninth Circuit is consistent with this Court's previous analysis of Eighth Amendment claims regarding sexual assault. Sexual conduct between a prisoner and guard serves no valid penological purpose, and where no legitimate penological purpose can be inferred from a prison employee's alleged conduct…the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm."[60] Based upon the facts of this Complaint, read in the light most favorable to the plaintiff, Hendrickson "forced" Plaintiff into a sexual engagement.[61] Further, as a result of the alleged forced sexual engagement, Reel developed physical injuries.[62] Considering the non-consensual nature of the conduct alleged and the fact that injuries were sustained, Reel has stated a claim for cruel and unusual punishment against Hendrickson for the sexual encounter taking place on April 23, 2019.

---

[59] *Bearchild,* 947 F.3d 1130.
[60] *Lagarde v. Metz*, Civil Action No. 13-805, 2017 WL 457654 at *4 (M.D. La. Feb. 2, 2017) (quoting *Giron v. Corrections Corp. of America*, 191 F.3d 1281, 1290 (10th Cir. 1999) (internal quotation marks omitted).
[61] R. Doc. 1, p. 5.
[62] R. Doc. 1, p. 5. Though the plaintiff in this case did suffer injuries, based on the above case law, sexual assault is repugnant to the conscience of mankind, and thus, injury is not required to pursue an Eighth Amendment claim.

Because the plaintiff did not specify whether he was suing the defendants in their individual or official capacities, the Court presumes the defendants were sued in both capacities. To the extent Reel seeks monetary relief against Jones and Hendrickson in their official capacities, such claims are subject to dismissal. 42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[63] In addition, in *Hafer v. Melo*,[64] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[65] Accordingly, Reel's § 1983 claims asserted against Jones and Hendrickson in their official capacities for monetary damages are subject to dismissal.

## RECOMMENDATION

**IT IS RECOMMENDED** that the claims asserted against James LeBlanc and Darrel Vannoy be **DISMISSED WITH PREJUDICE** as legally frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A.

**IT IS FURTHER RECOMMENDED** that the plaintiff's claims against Trent Barton and Charles Gooden be **DISMISSED WITHOUT PREJUDICE**[66] for failure to exhaust administrative remedies pursuant to 42 U.S.C § 1997e.

**IT IS FURTHER RECOMMENDED** that the plaintiff's claims for monetary relief against Marcus Jones and Tammy Hendrickson in their official capacities be dismissed with

---

[63] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).
[64] 502 U.S. 21 (1991).
[65] *Id*. at 25.
[66] *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007) (dismissing § 1983 action without prejudice for failure to exhaust administrative remedies).

prejudice and that this matter be referred back to the magistrate judge for further proceedings on the plaintiff's remaining claims (*i.e.*, the plaintiff's claims for monetary damages against Jones and Hendrickson in their individual capacities for excessive force for the incidents occurring on April 23, 2019).  An Order regarding service of process of the excessive force claims against Marcus Jones and Tammy Hendrickson will be issued separately.

Signed in Baton Rouge, Louisiana, on May 19, 2020.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**