**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**RONALD REEL (#356002)**                                      **CIVIL ACTION NO.**

**VERSUS**                                                                  **19-838-JWD-SDJ**

**JAMES M. LeBLANC, ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 3, 2021.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RONALD REEL (#356002)                                CIVIL ACTION NO.

VERSUS                                               19-838-JWD-SDJ

JAMES M. LeBLANC, ET AL.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment filed by Marcus Jones and Tammy Hendrickson.[1] The Motion is opposed.[2] For the following reasons, the undersigned recommends the Motion be denied.

**I.    Background**

Reel filed the instant action against James M. LeBlanc, Darrel Vannoy, Marcus Jones, and Tammy Hendrickson, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Reel alleges that on April 23, 2019, Hendrickson forced the plaintiff "into a sexual engagement" involving oral sex performed on him.[3] Reel alleges this contact caused sores and rashes on his genitalia.[4] On this same date, while he was handcuffed behind his back, Jones allegedly sprayed Reel with a chemical agent, "rammed" his head into the concrete, struck him with a metal object, stripped him naked, and sprayed chemical agent onto his genital area, causing injury.[5] Reel filed a health care request on May 1, 2019, as a result of the injuries to his genitalia.[6] He was examined and prescribed medications.

---

[1] R. Doc. 27.
[2] R. Doc. 40.
[3] R. Doc. 1, p. 5.
[4] R. Doc. 1, p. 5.
[5] R. Doc. 1, p. 5.
[6] R. Doc. 1, p. 5.

On March 9, 2020, Reel filed a supplemental complaint alleging additional causes of action against two new defendants, Trent Barton and Charles Gooden.[7] Thereafter, the Court dismissed all claims against James LeBlanc, Darrel Vannoy, Trent Barton, and Charles Gooden, as well as Plaintiff's claims for monetary relief against Marcus Jones and Tammy Hendrickson in their official capacities.[8] Accordingly, all that remains are Plaintiff's claims for monetary damages against Jones and Hendrickson in their individual capacities for excessive force for the incidents occurring on April 23, 2019.[9]

## II. Law & Analysis

### a. Standard of Review

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, such that the moving party is entitled to judgment as a matter of law.[10] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[11] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[12] Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[13] In

---

[7] R. Doc. 7.
[8] R. Docs. 8 & 11.
[9] R. Docs. 1, 8, & 11.
[10] Rule 56, Federal Rules of Civil Procedure. *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[11] *Celotex Corp.*, 477 U.S. at 323.
[12] *Anderson*, 477 U.S. at 248.
[13] *Celotex Corp.*, 477 U.S. at 323.

resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party and may not evaluate the credibility of witnesses, weigh the evidence, or resolve material factual disputes.[14]

### b. Genuine Disputes of Material Fact Exist, Rendering Summary Judgment Inappropriate

#### i. Excessive Force

Force is considered excessive in violation of the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[15] "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[16] The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."[17] Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any; the need for the application of force; the relationship between the need for force and the amount of force utilized; the threat reasonably perceived by prison officials; and any efforts made to temper the severity of a forceful response.[18]

---

[14] *International Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257, 1263 (5th Cir. 1991).
[15] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian,* 503 U.S. 1, 7 (1992).
[16] *Wilkins*, 559 U.S. at 38.
[17] *Hudson*, 503 U.S. at 10.
[18] *Id.* at 7.

3

### ii. A Genuine Dispute Exists Regarding the Encounter Between Reel and Jones

Defendants have not produced *any* evidence to dispute that the encounter between Reel and Jones took place, but Reel has produced competent summary judgment evidence that Jones sprayed Reel directly in his face and genitals with chemical agent, that Reel's head was "rammed" into the ground by Jones, that Jones hit Reel with a metal can, and that the entire time Reel was restrained with his hands behind his back and never demonstrated any aggression or resisted.[19] Defendants only argue that Reel's medical records do not evidence that Reel complained of head trauma or being beaten and that medical records do not support that Reel's penis was sprayed with chemical agent.[20]

However, a review of the records demonstrates these assertions are false. Defendants would have this Court believe that the medical records do not demonstrate that Reel had any injury to his penis, but the records state that Reel's penis was positive for redness[21] and that Reel had a "superficial denuded area of epidermis" at the junction of the glans and shaft, meaning that Reel was missing some skin on his penis.[22] Moreover, the missing skin was noted on May 1, 2019, approximately one week after the alleged incident. Though Reel did not seek treatment for the alleged head trauma until months after the incident, this delay in seeking care is not evidence that an injury did not occur.[23] The records demonstrate that Reel complained of a "fractured-cracking skull from Marcus Jones slamming [his] head into the concrete ground."[24] Reel also complained of blood in his nose, blurred vision, dizziness, and pain.[25] Further, the fact that Reel did not seek

---

[19] R. Doc. 40-1, pp. 26-28.
[20] *See* R. Doc. 27-2.
[21] R. Doc. 27-5, p. 3.
[22] R. Doc. 27-5, p. 6.
[23] R. Doc. 40-1, p. 34.
[24] R. Doc. 40-1, p. 34.
[25] R. Doc. 40-1, p. 34.

immediate attention for this particular injury is a fact that may be considered in relation to whether Reel's complaints regarding head trauma are credible, which is a determination that must be left to the jury.[26] Additionally, Defendants do not argue that Reel failed to complain of trauma to his right eye as a result of the incident with Jones, and medical records support that Reel complained regarding pain and vision problems with his right eye.[27]

Though Defendants have pointed to a lack of reported or observable injury as justification for the grant of summary judgment, records indicate that injuries were reported, as discussed above. Further, no specific quantum of injury is necessary to support a claim of excessive force, and even minor injuries alone do not justify dismissal, especially in circumstances such as those presented here, where the evidence indicates there was no need for the use of force, no threat reasonably perceived by Jones, and that at least some of the force was especially egregious in character.[28] Reel has presented evidence of injury, and though a jury may ultimately determine that the injuries complained of did not occur or were not attributable to the April 23, 2018 incident with Jones, that is a question for the jury to decide.[29]

---

[26] *See Holmes v. Stalder*, 254 F.3d 71 (5th Cir. 2001) (the fact that a plaintiff delayed additional treatment and that the testimony of the attending nurse were that the plaintiff had no injuries went towards credibility).

[27] R. Doc. 27-5.

[28] *See Martin v. Seal,* 510 Fed. Appx. 309 (5th Cir.2013) (overturning the district court's denial of qualified immunity to a prison security officer in connection with a claim of excessive force where the district court failed to properly consider the relevant factors, including *inter alia* the extent of injury or lack thereof, noting the conflict between the defendants' assertion that the plaintiff sustained no injury from an application of irritant spray and the plaintiff's competing assertion that much more spray was utilized than the defendants admitted). *See also Comeaux v. Sutton,* 496 Fed. Appx. 368, 371 (5th Cir.2012) (noting that the plaintiff's minimal injuries, described as "a bruised lip" and "two superficial scrapes," did not relieve the defendants of liability for excessive force); *Brown v. Jones,* 471 Fed. Appx. 420 (5th Cir.2012) (finding that the plaintiff's claim of injury, resulting from being allegedly grabbed and struck in the groin, was sufficient to overcome the defendants' motion for summary judgment); *Pea v. Cain*, No. 12-779, 2014 WL 268696, at *5 (M.D. La. Jan. 23, 2014).

[29] Though a lack of injury may ultimately result in Reel not obtaining compensatory damages, he may still obtain nominal or punitive damages for the act of excessive force. To recover nominal or punitive damages, Plaintiff must establish a violation of his constitutional rights. In order to recover punitive damages, Plaintiff must establish that Defendants violated his constitutional rights with "evil intent" or "callous indifference." *See Allen v. Stadler*, 201 F.Appx. 276 (5th Cir. 2006) (citing *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th. Cir. 2003)). Plaintiff has specifically sought punitive damages in this case. R. Doc. 1, p. 8.

### iii. A Genuine Dispute Exists Regarding the Encounter Between Reel and Hendrickson

Defendants assert that the claim regarding the sexual encounter between Reel and Hendrickson is unexhausted. Pursuant to the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[30] The PLRA's exhaustion requirement is mandatory, and unexhausted claims may not be brought in court.[31]

A review of the pertinent grievance ("ARP") demonstrates that the claim has been exhausted.[32] In the pertinent ARP, Reel clearly states as follows:

> A Review of the Audio Recording of the 4-23-19-Rule #22 of Inmate Reel, you would Find that Ms. Tammy Hendrickson voice is not on that Audio Recording stating, "we're still on the Record." Nor would you hear a reply from inmate Reel. Therefore, This mean one of two things; 1.) Ms. Tammy Hendrickson was alone for sometime with inmate Reel and she forced inmate Reel into sexual engagements, or 2.) inmate Reel Never Reentered the Courtroom and Ms. Hendrickson Flat out Lied on inmate Reel on her Report. I'll leave it up to Tammy Hendrickson to tell, which one of these two is the truth.[33]

Prison officials are only entitled to receive "fair notice of the problem that will form the basis of the prisoner's suit," so as to provide the prison the time and opportunity to address complaints internally.[34] The degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose.[35] "If an inmate claims that a guard acted improperly, we can assume that the administrators responding to the grievance would want to know—and a prisoner could

---

[30] 42 U.S.C. § 1997(e)(a).
[31] *Jones v. Bock,* 549 U.S. 199, 211 (2007).
[32] R. Doc. 27-3.
[33] R. Doc. 27-3, pp. 4-5 (emphasis in original).
[34] *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (internal quotations and citations omitted).
[35] *Id.*

6

ordinarily be expected to provide—details regarding who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter."[36]

Though Reel's statement contained in the ARP is oddly worded, it was sufficient to put the prison on notice of what Reel's claims against Hendrickson may be. The information provided by Reel in the ARP indicated that an unwanted sexual encounter may have occurred and prompted Hendrickson to answer regarding the encounter, the date of the incident, and who was involved. Further, though a complaint brought pursuant to the Prison Rape Elimination Act ("PREA") does not satisfy the exhaustion requirement of the PLRA,[37] the sexual assault was noted in the ARP, and the PREA complaint was clearly considered at the first step of the ARP process.[38] Additionally, Hendrickson clearly made a statement regarding the sexual encounter with respect to the ARP; Hendrickson specifically states, "I was also called to the PREA investigation office on a later date and wrote out a statement concerning the abovementioned incident to them. All the facts stated on each report are true and correct and I do not deviate from what was originally reported."[39] Officials certainly had fair notice, and based upon the statement made by Hendrickson with respect to the ARP and upon the first step response, it appears the complaint regarding the sexual encounter was actually considered and rejected by prison officials.[40]

Regarding the merits of Reel's claim against Hendrickson, this Court has previously stated that "[s]exual conduct between a prisoner and a guard serves no valid penological purpose, and

---

[36] *Id.* at 517.
[37] *Martin v. Claiborne Parish Detention Center*, No. 18-1401, 2019 WL 10478533, at *3 (W.D. La. Nov. 25, 2019).
[38] R. Doc. 40-1, pp. 15-16 (at the first step, it was noted that PREA investigation was conducted, that Hendrickson had made a statement, and that her statements in the PREA investigation did not deviate from what was originally reported).
[39] R. Doc. 40-1, p. 14.
[40] The first step response clearly noted that Hendrickson relied on the statement given in relation to the PREA investigation for purposes of defending the ARP. R. Doc. 40-1, p. 15.

where no legitimate penological purpose can be inferred from a prison employee's alleged conduct…the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm."[41]  Reel has now produced competent summary judgment evidence that Hendrickson "sucked [his] penis against [his] will, which caused injuries."[42]  Medical records further support that Reel had injuries on his penis after the encounter.[43]  Defendants have not produced any competent summary judgment evidence to refute this.  Thus, summary judgment in favor of Defendants must be denied.

## RECOMMENDATION

**IT IS RECOMMENDED** that the Motion for Summary Judgment filed by Marcus Jones and Tammy Hendrickson be **DENIED** and that this case be referred back to the undersigned for further proceedings.

Signed in Baton Rouge, Louisiana, on August 3, 2021.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[41] R. Doc. 8, p. 12 (citing *Lagarde v. Metz*, Civil Action No. 13-805, 2017 WL 457654 at *4 (M.D. La. Feb. 2, 2017) (quoting *Giron v. Corrections Corp. of America*, 191 F.3d 1281, 1290 (10th Cir. 1999) (internal quotation marks omitted))).

[42] R. Doc. 40-1, p. 28.  The medical records indicate that Reel complained of sores on his penis, and upon examination, redness and sores were visible.  R. Doc. 40-1, p. 10.

[43] As noted above, medical records state that Reel had redness on his penis and that some skin was missing.  Though the records do not indicate whether this was caused by Hendrickson or Jones, that is a factual issue.